THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN FRENCH, Defendant-Appellant.

(No. 55867;

First District—February 9, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas D. Taubert, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, John French, after a bench trial, was found guilty of the murder of Michael Gales, a 16 year old boy, and he was sentenced to serve a term of not less than 14 nor more than 20 years in the penitentiary.

On appeal, he contends (1) that the State did not prove beyond a reasonable doubt that he killed the decedent without justification since the evidence showed that he acted in defense of his person, (2) that he was not guilty of murder because the evidence, at best, established only the commission of voluntary manslaughter, and (3) that the testimony of the State's witnesses is so contradictory and unsatisfactory that it creates grave doubt that he actually fired the fatal shots.

Michael Gales was fatally wounded by a bullet on October 14, 1968, at about 6:00 or 6:30 P.M., as he was proceeding with a group in a westerly direction in the 500 block of East 45th Street in the City of Chicago.

Elizabeth Brown, who resides at 520 East 45th Street testified that at about 6:00 P.M. on the day in question she and her two daughters were walking west on 45th Street behind the defendant, whom she had known for five years, James Dunn, her nephew, and a third person. A group of about 18 young men approached from behind her, and she backed up against a fence to let them pass. As they went by her one of the group called out, "Say man, Stone's running." Thereafter, the defendant looked back and said, "Yes man, Stone's running." The defendant then stepped out into the street, turned around, pulled a gun, and said "D's running." After the gun was drawn, the members of the group started to run. Whereupon she saw French fire the gun and she heard two shots. She noticed no guns or weapons in the hands of the members of the group which passed her.

Grace Brantley, who was 13 years old, testified that she was playing in a yard near the scene of the killing. When she heard two shots, she ran to the gate and saw John French standing in the middle of the street and Michael Gales running and holding himself in the chest area. Michael Gales had no weapon or gun in his hand when she saw him.

Five persons who were with Michael Gales at the time the wound was inflicted testified on behalf of the prosecution. Each stated that he

was one of a group of seven which was walking west on 45th Street. Albert Clark called out, "Hey, Cuda," to one of the persons accompanying John French. Whereupon the defendant stepped out into the street, pulled out a gun, and started shooting. After the gun was drawn, the group ran and scattered. A bullet grazed Charles Hammette, and another bullet fatally wounded Michael Gales. Each testified that no one in the group was armed.

The defendant, John French, took the stand in his own defense and stated that just prior to the incident he was walking with two friends west on 45th Street, a short distance in front of Elizabeth Brown and her two daughters. After he heard someone holler, "Blackstone," and another shout, "Burn, Chief, Burn, Chief," he looked back and saw a gang of more than seven brandishing iron pipes, iron rails, and guns. Mrs. Brown and her children, stepped aside, and the gang rushed toward him. They made a circle about him, and words passed. Michael Gales, who was about five feet away from him, then reached for a gun and Fred Harris said to Gales, "Burn, Chief, Burn." The defendant jumped back and described the events which occurred immediately thereafter as follows:

"I don't know, I don't remember everything now. The next thing I know that I must have been shooting, too, you know. I wasn't trying to hurt nobody, though.

\* \* \*

I was stumbling back off the sidewalk, I wasn't trying to hurt nobody, I was just scared."

He further stated that at the time he was in fear for his life. At 7:30 P.M. or 8:00 P.M. he went to a police station to report the incident. On cross-examination he denied that he had ever been a member of the Disciples street gang.

The trial judge, after considering the evidence and argument of counsel, concluded that the defendant who was 21 years old and at least four years older than the other youths involved, was the only one who was armed and that the use of deadly force was unreasonable and unlawful. He consequently found the defendant guilty of murder.

The defendant initially contends that he acted in reasonable defense of his person when he fired the fatal shots. It is argued that "[deadly] force was not unreasonable when it is considered that he was confronted by some 18 youths who were part of a violent gang that themselves frequently used deadly weapons."

■■ The issue of self-defense is ordinarily a question of fact which must be resolved by the trier of fact. (*People v. Hurst*, 42 Ill.2d 217, 247

N.E.2d 614, *People v. Davis*, 35 Ill.2d 55, 219 N.E.2d 468), and a court of review will not disturb the verdict of a jury or the finding of a court unless the evidence is palpably contrary to the verdict or finding or so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Jordan*, 18 Ill.2d 489, 165 N.E.2d 296, *People v. Wesley*, 18 Ill.2d 138, 163 N.E.2d 500.

■■ According to the testimony of the defendant, he was confronted by a large and menacing group of youths who were brandishing iron pipes, iron rails, and guns; and he only fired his gun after he saw the decedent reach for a shiny gun. This was directly contradicted by the five witnesses who were with the decedent at the time of the shooting. Elizabeth Brown, a friend of the defendant, testified (1) that one of the youths called out, "Say man, Stone's running," (2) that the defendant was 50 feet away from the decedent when the shots were fired, and (3) that she noticed no weapons in the possession of persons who passed her. The trier of fact need not necessarily accept, as true, testimony concerning self-defense presented by the accused; but in weighing such evidence it must consider the probability or improbability of the testimony, the circumstances surrounding the killing, and the testimony of witnesses other than the accused. (*People v. Warren*, 33 Ill.2d 168, 210 N.E.2d 507, *People v. Uher*, 375 Ill. 499, 31 N.E.2d 936.) The trial judge found that the defendant was not acting in defense of his person at the time of the killing. That finding is supported by substantial evidence and will not be disturbed on review.

■■ The defendant, in the alternative, contends that "At best, the only offense which could be established by the evidence was that of voluntary manslaughter, and not murder." It is argued that "If the prosecution had proved the defendant killed Michael Gales, it had the burden, also, to prove malice, an essential element of murder." A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that if they existed, would justify or exonerate the killing, but this belief was unreasonable. (Section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 9—2(b)).) A person who kills an individual without lawful justification commits murder if in performing the acts which cause death, he knows that such acts create a strong probability of death or great bodily harm to that individual. (Section 9—1(a) (2) of the Criminal Code of 1961, Ill. Rev. Stat. 1967, ch. 38, par. 9—1(a) (2).) In order to justify a conviction for murder, it is not necessary for the State to prove that the accused had formed a specific intent to kill; it is sufficient to show that the accused voluntarily and wilfully committed an

888

act, the direct and natural tendency of which was to destroy another's life. (*People v. Davis*, 35 Ill.2d 55, 219 N.E.2d 468.) The intent is implied from the character of the act. *People v. Winters*, 29 Ill.2d 74, 193 N.E.2d 809.

█▌ The issue of whether an accused in killing another committed murder or voluntary manslaughter is a question of fact which must be resolved by the trier of fact. (*People v. Davis*, 35 Ill.2d 55, 219 N.E.2d 468.) The defendant admitted firing bullets, and as is pointed out above the evidence justified a finding (1) that the defendant discharged the revolver without provocation and without lawful justification and (2) that the defendant was guilty of murder.

It is finally contended that the State failed to prove the defendant guilty beyond a reasonable doubt because the testimony of the prosecution witnesses was so contradictory and unsatisfactory that it created grave doubt that the defendant actually fired the fatal shots. This argument is based upon conflicts and inconsistencies in the testimony concerning the number of youths present at the scene, the number of bullets fired, and the direction which the decedent was facing at the time of the shooting. The defendant himself admitted firing shots, and several witnesses for the State testified that the defendant fired the shots which wounded and eventually killed Michael Gales. The overwhelming weight of the evidence was that the defendant fired the shots which killed the decedent, and we cannot say that any inconsistencies which may exist in the record raise a reasonable doubt that the defendant fired the fatal shots.

For the reasons stated, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.