THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LONNIE McCAMBRY, Defendant-Appellant.

First District (1st Division)    No. 78-306

Opinion filed September 17, 1979.

James J. Doherty, Public Defender, of Chicago (Timothy D. Murphy and Leonard V. Solomon, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant was separately charged by information with armed robbery of a tavern and by indictment with armed robbery of a CTA bus, and attempt murder. All of the above charges arose from events which occurred on the evening of January 8, 1977. The tavern robbery and attempt murder charges were tried together before a jury which found the defendant not guilty of attempt murder and guilty of the armed robbery of the tavern. After entering judgment on the guilty verdict, the trial court sentenced the defendant to 10 to 30 years in prison with a five year term of parole.

After the above trial and pursuant to defendant's motion, the charges

of armed robbery pertaining to the CTA bus were transferred to a different judge. The defendant pleaded guilty to those charges and elected to be sentenced under the new Class X felony law. (See Ill. Ann. Stat., ch. 38, par. 1005—5—3 (Smith-Hurd Supp. 1979).) The trial court sentenced defendant to a determinate eight year term to run concurrently with the sentence previously imposed.

This appeal is from only the judgment and sentence imposed on the guilty verdict of the armed robbery of the tavern. On appeal, defendant raises the following issues: (1) whether he was denied a fair trial when the trial court admitted into evidence testimony concerning other crimes for which the defendant was not on trial; and (2) whether the maximum terms of his sentence were excessive, the result of consideration of improper evidence at the hearing on sentencing, and not properly reflective of his rehabilitative potential.

We affirm.

The testimony presented at trial established that at approximately 10:20 p.m. on January 8, 1977, Mr. Robert Davis was tending bar at the Playground Lounge at 7316 South Vincennes in Chicago when a man appeared at the front door of the tavern. After Davis released an electric lock, the man entered, approached the bar, and ordered a drink. Davis turned to fix the drink and when he turned again to face the man, the man was holding a pistol. The man ordered Davis to empty the register and fled with approximately $80.

At the time of the robbery, Theodore Dixon, an investigator for the Chicago Police Department, was watching television with a group of people in the rear of the tavern. Dixon heard Davis yell, "Dixon, Dixon, I have been robbed,". and left the tavern in pursuit of the robber. Dixon called out, "Halt, police officer." When the robber did not respond, Dixon fired his gun. As the robber hid behind a tree, Dixon thought he saw a gun and dove between two parked automobiles. Although Dixon thought he heard a bullet strike one of the cars, no casing or shell was ever recovered. Dixon then saw the robber flee into a gangway between two buildings at 7218 South Wentworth. Dixon arrived at the entrance of the gangway and thought he saw condensate vapor caused by the suspect's breath coming into contact with the cold winter air. Hearing sirens, he glanced away momentarily. When he looked back into the gangway, the "vapor" was gone.

Another police officer, Officer McLeod, arrived at the scene. McLeod and Dixon proceeded to the tree where the defendant had been hiding and there discovered a left hand glove and some paper money. Another police officer, Officer Pustay, drove around the neighborhood in his squad car searching for the defendant. As he passed 7205 Yale Street, he saw the defendant coming out of the vestibule of the apartment building located

there. After a chase, he apprehended the defendant. A search of defendant's pockets revealed $153.83 in cash, an 1899 silver dollar, seven bus tokens, and a right hand glove. During the State's case-in-chief, the trial court permitted the State over defense objection to introduce into evidence the testimony of two victims of a robbery on a CTA bus. Both witnesses testified that at approximately 10 p.m. on the night in question in the vicinity of 70th and 75th and Vincennes Avenue, a man boarded the bus, pulled out an automatic weapon, and announced a robbery. One witness indicated that the robber took his 1899 silver dollar, and that the dollar found in defendant's pocket was similar to his silver dollar. The other witness said he had lost seven bus tokens like those found in defendant's pocket. Both witnesses identified the defendant as the man who robbed them.

The defense presented testimony at trial in an attempt to establish an alibi defense. The owner of the "Devil's Den" cocktail lounge testified that the defendant was present at a party in the lounge until at least 9:30 p.m. the night of the robbery. Another person present at that party testified that the defendant was at the lounge until at least 9 p.m. Also called by the defendant to testify was his girl friend who testified that she and the defendant left the "Devil's Den" at about 10:25 p.m. The defendant was drunk and they went for a walk. The couple heard shooting and when they began to run, the defendant fell. The defendant's girl friend kept on running and later noticed that the police were arresting the defendant. She became frightened and took a cab home.

■■ Defendant first contends that he was denied a fair trial because the trial court received into evidence testimony concerning other crimes for which he was not on trial. As a general rule, evidence of other crimes committed by the defendant is inadmissible due to the clear risk of prejudice to the defendant. (*People v. Dumas* (1977), 49 Ill. App. 3d 756, 364 N.E.2d 616.) However, an exception arises when that evidence shows motive, intent, identity, absence of mistake, or *modus operandi* even though it may show the commission of a separate offense. (*People v. Marine* (1977), 48 Ill. App. 3d 271, 362 N.E.2d 454.) As stated in *United States ex rel. Durso v. Pate* (7th Cir. 1970), 426 F.2d 1083, 1086:

> "Evidence of other criminal activities is clearly admissible if it is relevant to indicate motive or some other element of the crime charged, unless minor probative value is outweighed by major prejudicial effect. E.g., *United States v. Fierson, supra*; *United States v. Marine*, 413 F.2d 214 (7th Cir. 1969). The question on admissibility is, in the first instance, a matter addressed to the discretion of the trial court. *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *United States v. Fierson, supra*."

Such evidence is admissible only where it is so clearly connected with the main issues in the case at bar as to tend to prove the accused guilty of the offense charged. *People v. Oliver* (1977), 50 Ill. App. 3d 665, 365 N.E.2d 618.

■■ We conclude that under the above criteria the trial court did not err in allowing into evidence testimony concerning the robberies on the CTA bus. After reviewing the testimony of the two victims of those robberies, we believe it to be so closely connected with the instant crime that it tended to prove the accused guilty of that crime. That testimony, which described the defendant's appearance in detail and placed him several blocks from the scene of the crime 10 to 20 minutes prior to the crime, aided in establishing identity and in placing the defendant in close proximity to the time and place of the crime. Moreover, that testimony assisted in establishing a *modus operandi* in that both armed robberies were accomplished in a similar manner with the same type of automatic weapon. Under all the circumstances, we do not find the instant situation to be one where minor probative value is outweighed by major prejudicial effect and see no abuse of discretion in the trial court's ruling which allowed the testimony into evidence.

■■ Defendant next argues that the maximum and minimum terms of his sentence were excessive, did not properly reflect his rehabilitative potential, and were the result of the trial court's consideration of improper evidence at the sentencing hearing. A reviewing court can alter the sentence imposed by the trial court only when it is the result of a clear abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In urging that an abuse of discretion occurred in sentencing, defendant argues that his minimum sentence of ten years is 2½ times the minimum permitted by statute (Ill. Ann. Stat., ch. 38, par. 1005—8—1(a)(4) (Smith-Hurd Supp. 1979)), and does not take into account his rehabilitative potential. Defendant also contrasts the sentence imposed in the instant case with the eight-year determinate sentence imposed by another judge for the armed robberies committed on the CTA bus. We find the above arguments unpersuasive. Although it is true that excessive minimum sentences may defeat the effectiveness of the parole system (*People v. Lillie* (1967), 79 Ill. App. 2d 174, 223 N.E.2d 716) and that in imposing sentence the trial court should consider a defendant's rehabilitative potential (*People v. Nelson* (1968), 41 Ill. 2d 364, 243 N.E.2d 225), there nonetheless exist instances when the trial court may, in its discretion, impose substantial minimum sentences. In the instant case we see no evidence of defendant's rehabilitative potential. In fact, the record indicates that the defendant had previous convictions for criminal trespass to a vehicle, petty theft, and receiving stolen property, and that

he had been sentenced to probation for each conviction—all facts which the trial court noted in pronouncing sentence.

■■ Defendant correctly points out that a different judge imposed a different sentence for the robberies committed on the CTA bus. However, we fail to see any connection between the two sentences imposed by different judges for different crimes. Moreover, even assuming that the two sentences are somehow related, we would point out that the eight-year determinate sentence imposed for the CTA robberies was imposed under a different statute (see Ill. Ann. Stat., ch. 38, par. 1005—5—3 (Smith-Hurd Supp. 1979)) and only after defendant pleaded guilty to the crimes charged.

■■ Defendant's final argument concerning his sentencing is that the trial court improperly considered in aggravation evidence of pending indictments arising from the CTA robberies and the attempt murder charge of which defendant had just been acquitted. Defendant refers to the following colloquy:

> "ASSISTANT STATE'S ATTORNEY: Your Honor, I would just very briefly state in my opinion this is a very serious offense that Mr. McCambry committed. The evidence introduced in this case, the Court will recall that during the case and prior to the police officer, he also boarded a CTA bus.
>
> ASSISTANT PUBLIC DEFENDER: Objection, your Honor, there was a finding of not guilty on that.
>
> THE COURT: Still some evidence.
>
> ASSISTANT STATE'S ATTORNEY: I believe the evidence also showed he boarded a CTA bus, held the driver at gunpoint, threatened the passengers with their lives if they didn't give up their money."

It is unclear in the above colloquy whether the trial court's statement "some evidence" referred to the circumstances surrounding the robberies on the CTA bus or to the circumstances surrounding the attempt murder charge of which defendant was acquitted. We believe that in either case the trial court did not consider improper evidence in sentencing the defendant. In sentencing, the trial court may consider conduct which may be characterized as criminal and unrelated to the facts underlying defendant's conviction if that evidence is accurate and reliable. (*People v. Kirk* (1978), 62 Ill. App. 3d 49, 378 N.E.2d 795.) Under this standard, we believe the trial court could properly consider evidence of the CTA robberies. The witnesses who testified as to this robbery were in court and available for cross-examination. Their testimony was accurate and reliable. Moreover, even if the trial court's statement "some evidence" referred to the circumstances surrounding the attempt murder charge, we

do not conclude that the trial court considered improper evidence in imposing sentence. It is presumed that the trial judge disregards improper evidence at a presentence hearing and only where the record affirmatively shows that the trial court considered improper evidence in imposing sentence will the sentence be vacated. (*People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265.) It is not apparent from a fair reading of the colloquy that it affirmatively shows that the trial court considered any improper evidence. We believe that the trial court's remark at most is reference to Officer Dixon's testimony concerning defendant's flight and failure to heed his commands to halt. Such testimony is a proper consideration in sentencing.

For the foregoing reasons, we affirm the judgment and sentence imposed by the trial court.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.