THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID SANDERS, Defendant-Appellant.

First District (3rd Division)    No. 78-2129

Opinion filed February 13, 1980.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, David Sanders, was charged with the murder and armed robbery of Dorothy Cerny and James Schmidt and with conspiracy to commit armed robbery. A jury found him guilty of two counts of murder, two counts of armed robbery, and one count of conspiracy. The trial court sentenced defendant to 300 to 900 years on each murder count and to 50 to 100 years on each armed robbery count, all sentences to run

concurrently. The court did not impose sentence on the conspiracy count. On appeal defendant contends that the trial court committed reversible error by allowing the State to argue to the jury and to introduce evidence of the murder of Betty Lou Harmon, a crime for which he was not charged. Defendant also maintains that he was denied a fair trial when in his opening statement the prosecutor informed the jury the State would prove defendant made a damaging admission to Kenneth Richards and then failed to offer proof of the admission. The pertinent facts necessary for an understanding of the issues are as follows.

On June 3, 1973, a series of three murders and robberies occurred along Illinois State Highway 57. Involved were defendant, Henry Brisbon, Stanley Charleston, and Darrel Thompson. Brisbon was tried separately, was found guilty, and is not involved in this appeal. Charleston and Thompson, who after they were arrested in 1976 gave statements regarding these crimes, pleaded guilty to murder. In return for testifying for the State in the present case, they received a promise of a specific term of years and assurance that they would not be jailed in the same institution as defendant and Brisbon.

Defendant admitted his presence and participation in the heinous crimes, but insisted that he was compelled to do so under threat of death by Brisbon. Thompson and Charleston testified that defendant participated without compulsion. According to Thompson and Charleston, defendant's only objection to the robbery plan which resulted in the murders was that it would entail damage to his automobile. When he was persuaded that his automobile would not be damaged, defendant had no objection to the plan.

On June 3, 1973, defendant drove the other three men from Chicago to Kankakee where they planned to rob a restaurant. Along the way, they discussed obtaining a shotgun and defendant displayed a shotgun shell. Defendant stopped at a home in Kankakee and obtained a shotgun from one of the occupants. The group subsequently decided not to rob the restaurant, and unsuccessfully looked for someone to rob on the Kankakee streets. Defendant started back to Chicago, and while enroute, the group agreed on another robbery plan which resulted in the present crimes.

Brisbon suggested "bumping" other automobiles on I-57. They would stage accidents and then rob the occupants when they emerged from their vehicles to assess damages. The four men agreed that after defendant bumped another automobile Brisbon would emerge with the shotgun to rob the occupants. Shortly thereafter, defendant bumped an automobile operated by Doris Bell. When she pulled off the highway and halted her automobile, both defendant and Brisbon emerged. Brisbon pointed the shotgun at her, but she walked back to her automobile and

drove off. Defendant yelled at Brisbon for not killing her. Bell survived, and was a prosecution witness in the present case.

Defendant subsequently bumped an automobile operated by Betty Lou Harmon. Defendant and she engaged in conversation after she pulled to the side of the road. Brisbon, carrying the gun, walked up to Mrs. Harmon and directed her to the rear seat of her automobile. Thompson drove the Harmon automobile a short distance, with defendant and Charleston following in defendant's car. As Brisbon compelled the lady to remove her clothing, Thompson halted the vehicle; defendant also stopped. Mrs. Harmon attempted to flee, but defendant chased her and returned her to Brisbon. Brisbon marched her to a corn field and, a few moments later, the others heard gunshots. When Brisbon returned, he said that he had obtained only change. He also said that he had killed the woman, and defendant said that was good. Mrs. Harmon subsequently was found dead in the corn field. The medical examiner testified without objection that her assailant had killed her by placing a shotgun in her vagina and pulling the trigger. Her husband testified as a "life and death" witness in the present trial.

Defendant, after announcing that they had to get more money, proceeded to drive to Chicago along I-57. Thompson followed in the Harmon vehicle. Defendant subsequently bumped the automobile occupied by Dorothy Cerny and James Schmidt, the couple whose murders and robberies are the subject of the present charges. As before, defendant engaged them in conversation about the faked accident. Brisbon then led the couple to a grassy area at the side of the highway and fatally shot them. Prior to the shooting, at the direction of defendant and Brisbon, Thompson took the Cerny purse and Schmidt's wallet and watch. The four men then departed, with Charleston driving the Schmidt vehicle. The group met in Chicago and divided the stolen money.

At the trial, Richard Ponville, James Felton, Larry Baysas, and Jessie Jones were State witnesses. They testified that at various times they had conversations with defendant during which he told them he participated in the I-57 murders.

Defendant testified that when they departed Kankakee, Brisbon conceived the plan to bump other automobiles and rob the occupants. When defendant objected, Brisbon pointed the shotgun at him and told him he had to do it. At gunpoint, defendant was forced to bump the three automobiles. Defendant begged Brisbon not to shoot Bell and, as a result, she was able to escape. Defendant witnessed but took no part in the murder of Betty Lou Harmon. Similarly, in fear of his life, defendant watched as Brisbon shotgunned the couple. Thompson and Charleston testified that defendant was not compelled to take part in the crimes.

Defendant first contends that the trial court committed reversible

error by allowing the State to argue to the jury and to introduce evidence of the murder of Betty Lou Harmon, a crime for which he was not charged.

■■ Generally, evidence of a defendant's involvement in a crime not charged against him is impermissible. (*People v. Harris* (1970), 46 Ill. 2d 395, 263 N.E.2d 35.) "Other crime" evidence, however, may be admitted to show intent, motive, identity, knowledge, common scheme or design, or absence of mistake. (*People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225.) In the present case, the crimes were so closely related in time, place and manner of execution that evidence of the Harmon murder was admissible to show a common intent. There were so many similarities in the crimes that it was proper to show that both crimes were part of a common robbery-murder plan. Indeed, defense counsel in his opening statement went into considerable detail about the Harmon murder, and defendant described the crime in his testimony. The trial court did not err by allowing the State to argue to the jury and to introduce evidence of the Harmon murder. (We reach this result without consideration of the State's argument that the evidence properly was introduced to prove that defendant participated in the conspiracy charged.)

■■ Defendant suggests in this court that even if evidence of the Harmon murder properly was introduced at trial, the court erred in admitting testimony as to the manner of her death. As we have stated, defendant offered no objection to the testimony, and has waived the point on review. See *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

Defendant also contends that he was denied a fair trial as a result of the prosecutor's comment in opening statement that the State would prove defendant made an admission of guilt to Kenneth Richards and then failed to offer proof of the admission.

In his opening statement, the prosecutor stated that the evidence would show defendant had a conversation with a Kenneth Richards in the latter's jail cell. After pointing to a crucifix, defendant, according to the prosecutor, said that Christians were weak and begged for their lives. Defendant went on to say how "we killed some Christians on the highway." At trial the State did not offer evidence relating to the alleged conversation and admission.

■■ It is improper, at least with foreknowledge, to include matters in an opening statement which are not thereafter proved. (*People v. Butler* (1973), 12 Ill. App. 3d 541, 298 N.E.2d 798.) Absent deliberate misconduct on the part of the prosecutor, the error is not grounds for reversal unless the reference resulted in substantial prejudice to defendant. (*People v. Harris* (1979), 70 Ill. App. 3d 363, 387 N.E.2d 1109; *People v. Sheridan* (1978), 57 Ill. App. 3d 765, 373 N.E.2d 669.) In the present case, it was error on the part of the prosecutor to make the comment without offering

testimony in its support. Yet nothing in the record suggests that the prosecutor made the comment in bad faith. Moreover, several witnesses testified for the State that defendant at various times had admitted he was one of the I-57 killers. In his own testimony, defendant admitted his participation in the crimes but stated he was compelled to do so by Brisbon. The State thoroughly overcame the defense of compulsion, and the proof of defendant's voluntary participation and of his guilt of these crimes was overwhelming. For these reasons we conclude that the prosecutor's comment did not deny defendant a fair trial and did not constitute reversible error.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON and RIZZI, JJ., concur.