THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KURT BARTALL, Defendant-Appellant.

First District (4th Division)    No. 81-327

Opinion filed April 8, 1982.

LINN, J., dissenting.

Edward J. Egan, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael Shabat, Casimir J. Bartnik, and Rhoda Wexler Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Kurt Bartall, was convicted of murder and armed violence and sentenced to a term of 20 years in the Illinois State Penitentiary. The defendant's main arguments on appeal are that the State failed to prove him guilty of murder beyond a reasonable doubt and that the trial court erred in permitting the introduction of evidence of another crime. The defendant also raises several instances of prosecutorial misconduct and other trial errors which will be discussed later in the opinion.

At approximately 12:20 a.m. on December 30, 1979, Betty Quinn, Eileen Kampwirth, Bill Will and Mark Tatum were standing in a Jewel parking lot located on Milwaukee Avenue near Austin. They had just come out of a bar called "The Bag." The parking lot adjoined the southeast bound traffic lanes. According to Kampwirth's testimony there were no walls between the parties in the lot and Milwaukee Avenue and no parked cars between the parties and Milwaukee Avenue. Kampwirth stated that she heard a gun shot which sounded like a very loud firecracker. She looked first at Will and then at Quinn who was on the ground to her right. Quinn was lying on her back and bleeding profusely from the face.

Will testified that while in the parking lot, he heard two bangs, not more than 45 seconds apart. After the second bang, he saw a car in the northwest bound lane going at a normal speed.

A significant issue on appeal concerns the testimony of Kathy Preze. She testified over objection as to an occurrence which took place on the evening of December 30, 1979, 20 hours after the shooting of Quinn. She stated that at about 10:30 that evening she was driving in a northwest direction along Milwaukee Avenue near Devon when a car pulled in front of her and hit the brakes. She swerved to avoid it and heard a noise like a firecracker. When she looked into the other car, the driver made an obscene gesture and then pointed a gun at her face. She identified the defendant as the man who pointed the gun at her. When she saw the gun, Preze put up her hand and swung the car into on-coming traffic. She heard another noise that sounded like a firecracker. The defendant's car

then turned off its lights and sped away. Preze proceeded to the Niles police station and reported the incident. She later noticed a bullet hole on the passenger side above the rear tire. She saw the defendant at the Niles police station about a half hour later, and stated that the defendant's family had been friends of hers for years.

Chicago police detective Frank Cappitelli testified as to the contents of two statements made by the defendant. In the first statement, the defendant said that he was not on Milwaukee Avenue at the time of the Quinn shooting. He was in Elkhorn, Wisconsin, with his girlfriend, Cindy Kerstein. In the second statement, the defendant stated that he and Kerstein were driving northwest on Milwaukee Avenue in the late evening hours of December 29, 1979. He looked to see if there were any police around him and when he saw no one he fired two shots. He looked into the Jewel parking lot and did not see anyone in the parking lot.

A firearms examiner for the Chicago Police Department testified that in his opinion, two bullet jacket fragments which were removed from the body of the deceased were fired from the gun recovered from the defendant. By stipulation, Carol Christian testified that she was the manager of Rose's Cleaners, located at 5762 North Milwaukee Avenue. She was contacted by the Chicago Police Department at about 4 a.m. on December 30, 1979, and went to the store. She found a bullet hole in the front window. An evidence technician recovered a bullet from the wall.

Cindy Kerstein testified for the defense. She stated that she was engaged to the defendant and was driving with him along Milwaukee Avenue on the evening of December 29, 1979. As they were driving, she heard two shots which were fired from the defendant's gun. She described the condition of the car windshield as "just how they get in the winter time when you don't wash your car. That's slush, dirt on there." Kerstein said she did not see people on the street at the time she heard the shots and did not see people near that area on the sidewalk after she heard the first shot fired. The prosecutor was later permitted to show that at the preliminary hearing she testified that she saw people on the sidewalk on the driver's side of Milwaukee Avenue. Kerstein testified that after the shots were fired, she and the defendant drove to Elkhorn, Wisconsin. The next evening at approximately 10:30, she was again driving along Milwaukee Avenue with the defendant. She was dozing off in the passenger's seat and felt the defendant hit the brakes. The defendant appeared to be angry, and was saying, "[T]hey cut me off. They cut me off." He then said that he was going to "shoot her tires out." An objection to that statement was sustained.

During the course of the trial, the jury visited the scene and was allowed to observe the lighting conditions in the parking lot where Quinn was shot.

The first contention raised by the defendant is that the State failed to prove him guilty of murder beyond a reasonable doubt. He claims that the evidence established that he was, at worst, guilty of involuntary manslaughter.

To support this contention, the defendant points out that there is no direct evidence that he saw Quinn or that he intentionally fired at her. Thus, to find him guilty of murder, the jury had to infer that conditions were such that he must have seen the people standing in the parking lot and further, that he intended to shoot at Quinn. According to the defendant, that inference could not reasonably be drawn from the evidence presented to the jury for several reasons. First, the defendant and Quinn were complete strangers and it is therefore unreasonable to infer that he intended to fire at her. Second, although the State presented evidence that the parking lot was "well-lighted" at the time of the shooting, Kerstein's testimony established that the defendant's vision was clouded by the slush and dirt on his windshield. Third, the shooting occurred at 2:30 a.m., a time when people are not normally out in the streets. Fourth, the defendant left the scene at a normal rate of speed, which indicated that he had no reason to believe he had hurt anyone. Finally, the evidence showed that the first of the two bullets fired by the defendant went into the window of a store which was unoccupied at the time. This fact tended to show that the defendant was merely engaging in reckless behavior and did not intend to fire into a group of people.

■■ It is well established that the question of whether a homicide is murder or involuntary manslaughter is to be resolved by the trier of fact. (*People v. Farmer* (1980), 91 Ill. App. 3d 262, 414 N.E.2d 779.) A court of review will not disturb a jury's verdict in this respect unless the evidence is palpably contrary to the finding or so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. French* (1972), 3 Ill. App. 3d 884, 279 N.E.2d 519.

■■ Contrary to the defendant's assertion, the jury did not have to conclude that he intentionally fired at Quinn in order to find him guilty of murder. Under the Illinois definition of murder, the jury need only find that he voluntarily fired shots at a group of people, without justification, knowing there was a strong probability of death or great bodily harm to one or more of the individuals present. Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2).

■■ In the case at bar, the jury was called upon to draw certain inferences as to the manner of Quinn's death from the circumstantial evidence presented. The State presented evidence that the parking lot was well illuminated and that there were no cars or other obstacles between the defendant's car and the group standing in the lot which would obstruct the defendant's view. The jury had the opportunity to observe the lighting

conditions in the lot and, as evidenced by the verdict, concluded that the defendant was able to see the people standing there. Thus, the jury inferred from all the evidence before it that the defendant voluntarily fired a gun in the direction of a group of people he saw standing in a parking lot. The jury chose to disregard those arguments and explanations that would cause reasonable doubt. In our judgment, there was sufficient evidence to allow the above inferences to be drawn and to sustain the jury's verdict. The cases cited by the defendant do not require a different result. In *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389, the court reversed a murder conviction because the trial court had refused to give an instruction on involuntary manslaughter. *Bembroy* therefore does not contradict the proposition that the question of whether a killing is murder or involuntary manslaughter is a question of fact for the jury. In the case at bar, the jury was given instructions on both murder and involuntary manslaughter. In *People v. Felton* (1973), 12 Ill. App. 3d 201, 298 N.E.2d 372, the defendant fired a shot through a closed door, killing her boyfriend. The appellate court reversed the murder conviction, finding that the defendant had not been proved guilty beyond a reasonable doubt. In *Felton* the exact whereabouts of the deceased within the apartment were unknown to the defendant. In the instant case, there was sufficient evidence for the jury to infer that the defendant voluntarily fired the gun in the direction of a group of people he saw standing in a parking lot.

The defendant next contends that he is entitled to a new trial because the trial court erred in permitting the State to introduce evidence of another crime involving the defendant. The evidence to which he objects is the testimony of Preze that the defendant pointed a gun at her face and fired two shots into her car on the evening of December 30, 1979, approximately 20 hours after the shooting of Quinn. Preze was allowed to testify as to the details of this encounter. She identified the defendant as the man who fired the shots which struck her car. She also identified a photograph of the defendant taken at the time of his arrest which showed him with long hair, a beard, tattoos and a T-shirt. Preze then testified as to the difference between the defendant's appearance at trial and his appearance at the time the shooting occurred. The State argues that the evidence was properly admitted because it was probative of the defendant's intent and established the shooting of Quinn as part of a common scheme or design.

As a general rule, evidence of extra-indictment offenses is inadmissible where it is offered to show the defendant's propensity to commit unlawful acts. (*People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.) However, if such evidence is relevant to show motive, intent, identity, absence of mistake or *modus operandi*, it is admissible unless

minor probative value is outweighed by major prejudicial effect. (*People v. McCambry* (1979), 76 Ill. App. 3d 314, 395 N.E.2d 129.) In his treatise on the law of evidence, Wigmore states that in a homicide, evidence of other similar acts is probative of the defendant's intent to kill because it tends to negative inadvertence, accident or other forms of innocent intent. (2 Wigmore, Evidence §302, at 241 (Chadbourne rev. 1979).) The reasoning is that while accident or inadvertence might perhaps be present in one instance, the more often similar instances occur with similar results, the less likely is accident to be the true explanation. (2 Wigmore, Evidence §302, at 241 (Chadbourne rev. 1979).) To be admissible on the issue of intent, it is necessary that the other crimes be similar. (*People v. Sanders* (1980), 81 Ill. App. 3d 1001, 401 N.E.2d 1103; *United States v. Viruet* (2d Cir. 1976), 539 F.2d 295; *United States v. Hernandez-Miranda* (9th Cir. 1979), 601 F.2d 1104.) "Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance." 2 Wigmore, Evidence §302, at 245 (Chadbourne rev. 1979).

■■ We agree with the defendant that the incident involving Preze was not sufficiently similar to the crime with which he was charged to render it admissible on the issue of intent. The testimony of both Preze and Kerstein tended to show that there was a traffic incident which angered the defendant against Preze. Thus it is reasonable to infer that the defendant was motivated to frighten her by pointing a gun at her face. There is no evidence that the defendant even knew Quinn. After firing the shots into Preze's car, the defendant turned off his lights and sped away. After the Quinn shooting, he drove away at a normal rate of speed and made no evasive moves. Moreover, the Preze shooting took place 20 hours after the killing of Quinn. Because of the dissimilarity between the two, we do not believe that the facts of the Preze incident are in any way probative of the defendant's intent at the time he fired the shot which killed Quinn. It was thus error for the trial court to allow the introduction of evidence concerning this other crime.

■■ The State argues that even if the evidence was erroneously admitted, it was only harmless error. We disagree. The jury was presented with a very close case on whether the shooting of Quinn was intentional or merely reckless. While we have found sufficient evidence to support the jury's verdict of murder, we cannot say that this evidence was overwhelming. The evidence concerning the details of the other crime, especially the introduction of a photograph of the defendant wearing long hair, a beard and tattoos, could serve only to further prejudice the jury. Since it is possible that the evidence concerning the Preze incident acted to sway the jury's verdict, we find it necessary to reverse and remand for a new trial.

■■ Although not necessary for the disposition of this cause, we feel that certain acts of the prosecutor merit comment. First, when arguing that the parking lot in which Quinn was shot was well-illuminated, the prosecutor stated that, "I stood on the street last night. I could see, I could see. It's illuminated on this side of the street and illuminated on that side of the street. * * * I'm from Chicago. That's a very well-lighted street, one of the most well-lighted streets I've ever been on." These remarks clearly constitute testimony of the prosecutor and are therefore error. It is improper for a prosecutor to get before a jury that which amounts to his own testimony, unsworn and not subject to cross-examination. *People v. Ford* (1980), 83 Ill. App. 3d 57, 403 N.E.2d 512.

■■ In closing argument the prosecutor made the following references to the family of the deceased:

> "[Y]ou say if somebody shoots this thing it's a reckless act at four
> people, and then you tell the Quinns what you decided.
> * * *
> She has brothers and sisters and a mom and dad. They don't
> have Betty anymore. They don't talk to Betty anymore. They
> buried her in the ground last year because he killed her."

These remarks were in no way related to the issues in the case and were designed solely to prejudice the jury. As such, they are clearly prohibited. *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.

Finally, the defendant raises several instances of alleged error on the part of the trial court. We will consider only those which are likely to recur in a new trial.

■■ First, the defendant contends that the trial court abused its discretion in allowing into evidence a picture of the deceased. Ordinarily, the admission into evidence of a photograph of a homicide victim is within the discretion of the trial court. (*People v. Sprinkle* (1979), 74 Ill. App. 3d 456, 393 N.E.2d 94.) However, where a photograph is not probative of any material issue in the case, it should not be admitted. (*People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121, *cert. denied* (1977), 434 U.S. 988, 54 L. Ed. 2d 484, 98 S. Ct. 620.) Here there was no issue as to the cause of death or the identity of the victim which would warrant introduction of the photograph. Second, the defendant argues that the trial court erred in permitting the arresting officer to identify a shoulder holster, gun clip and bullets recovered from the defendant at the time of his arrest. He claims that the evidence was immaterial and introduced solely to prejudice the jury. In addressing this issue, we note that the defendant did not admit that Quinn was killed by a bullet fired from his gun. The State was required to link the defendant to the crime by establishing that the bullet recovered from Quinn's body was fired from a gun possessed by the defendant. Thus, the officer's testimony that the gun was

found in the defendant's possession at the time of his arrest was relevant to the State's case. We believe that the items objected to by the defendant were admissible as the subject of testimony concerning the details of the arrest. (*People v. LeBron* (1980), 83 Ill. App. 3d 598, 404 N.E.2d 540.) Third, the defendant asserts that it was error for the court to permit a police officer to testify that he advised the defendant of his constitutional rights. The defendant cites no authority to support his contention that this was error. We fail to see what possible prejudice could result to the defendant from apprising the jury that he was advised of his constitutional rights before making a statement.

For the foregoing reasons, the conviction of the defendant is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ROMITI, J., concurs.

JUSTICE LINN, dissenting:
I respectfully dissent from the majority's holding that the admission of evidence of a crime committed by defendant following the murder of Betty Quinn was sufficiently prejudicial to justify a reversal of defendant's conviction and a new trial. In my view, it was not error for the trial court to admit evidence of the second criminal incident. Furthermore, even assuming *arguendo* that this evidence was erroneously admitted, I believe the error was harmless in view of the overwhelming proof beyond a reasonable doubt that defendant murdered Quinn with a "malignant and abandoned heart." *People v. Cruz* (1974), 23 Ill. App. 3d 838, 320 N.E.2d 180 (abstract).

The majority correctly cites the general rules that evidence of extra-indictment offenses is inadmissible to show defendant's propensity to commit crimes (*People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773), but that such evidence is admissible if it is relevant to show motive, intent, identification, absence of mistake, or *modus operandi* (*People v. McCambry* (1979), 76 Ill. App. 3d 314, 395 N.E.2d 129). The majority then concludes that the evidence of the Preze incident was not sufficiently similar to the crime charged to render it admissible on the issue of defendant's intent. I agree with this holding, not because of the lack of similarity, but because evidence of a second offense may not be used to show intent to commit a first offense; such use would defeat any presumption of innocence. *People v. Brand* (1953), 415 Ill. 329, 114 N.E.2d 370, *cert. denied* (1954), 347 U.S. 959, 98 L. Ed. 1103, 74 S. Ct. 709.

I disagree, however, that because evidence of the second crime was inadmissible to establish intent, it was therefore inadmissible for any pur-

pose. The circumstances of defendant's apprehension following Preze's report to the police are relevant to the prosecution of the crime charged in that the gun found in his possession directly linked him to the Quinn murder. This court has repeatedly held that the State has a right to introduce evidence of the circumstances of defendant's arrest when it forms a continuous narrative of the context of the arrest. If this narrative includes evidence of connected crimes, that evidence is necessarily admissible as part of the sequence of events, even though it implicates defendant in the commission of another crime. (*People v. Tucker* (1969), 118 Ill. App. 2d 136, 255 N.E.2d 31; *People v. Sessions* (1968), 95 Ill. App. 2d 17, 238 N.E.2d 94.) Accordingly, I would hold that there was no error in admitting evidence of the Preze incident as part of the narrative of events that led to defendant's arrest and indictment for the murder of Betty Quinn.

However, even if the evidence of the second incident should have been excluded, its admission was certainly harmless error. The State's evidence established that the parking lot was well illuminated, and no cars or obstacles interfered with defendant's view. After personally evaluating the lighting conditions present at the scene, the jury concluded that defendant had seen the four people standing in the parking lot, had voluntarily fired a gun in their direction, and was therefore guilty of murder.

As the majority correctly states, the jury did not have to conclude that the defendant intentionally shot at Quinn in order to find him guilty of murder. "If a person voluntarily and wilfully does an act the direct and natural result of which is to destroy another's life, the conclusion * * * is that the destruction of another's life was intended * * *. It is sufficient if the killer * * * is actuated, in making the assault, by that wanton and reckless disregard of human life which denotes malice. [Citations.]" *People v. Wesley* (1959), 18 Ill. 2d 138, 156, 163 N.E.2d 500, 509.

In *People v. Forrest* (1971), 133 Ill. App. 2d 70, 73, 272 N.E.2d 813, 815, defendant's attempt to shoot into a passing automobile was held to be such a "wanton and reckless disregard of human life" that his murder conviction was unanimously affirmed. In *People v. Gonzales* (1968), 40 Ill. 2d 233, 242, 239 N.E.2d 783, 789, the court held that defendant's act of intentionally shooting into a group of men from a moving car was so clearly murder that to give a manslaughter instruction would be erroneous. "It is not necessary to show that [defendant] formed an intent to kill any particular person since there can be no question but that the natural tendency of this act would be to destroy another's life. In a situation such as this the criminal intent to murder may be implied from the character of the act." 40 Ill. 2d 233, 242, 239 N.E.2d 783, 789.

The vicious act of defendant Bartall, strikingly similar to the acts of the defendants in *Forrest* and *Gonzales*, demonstrates that same indiffer-

ence to the value of human life. One who "can coolly shoot * * * persons guiltless of any wrongdoing toward him or provocation for such attack is, if possible, worse than the man who endures insult or broods over a wrong * * * and then * * * kills his personal enemy." *Banks v. State* (1919), 85 Tex. Crim. 165, 168, 211 S.W. 217, 218.

In my view, defendant cannot shield himself from the consequences of his wicked and unprincipled act by objecting to admission at his trial of evidence concerning another criminal offense. The jury found defendant guilty of murder beyond a reasonable doubt. The record affirmatively indicates that this verdict was based on overwhelming evidence, and I would therefore affirm defendant's conviction.

Defendant claims the admission of other prejudicial evidence warranting reversal. I would find the claim to be without merit, since at best the claimed error was harmless in nature and additionally the evidence of guilt, in my judgment, was overwhelming.