THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID LEE PAULEY, Defendant-Appellant.

Fifth District   No. 82—90

Opinion filed September 2, 1983.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John H. Ward, State's Attorney, of Taylorville (Stephen E. Norris and Mark A. LaRose, both of State's Attorneys Appellate Service Commission,

of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

David Lee Pauley, the defendant, was convicted by a jury in the circuit court of Christian County for the August 20, 1981, murder of 19-year-old Dottie Diane Rhodes. He was sentenced to 40 years' imprisonment. An autopsy showed that the victim was killed by a gunshot wound in the face between 4:20 and 6:20 a.m. on the morning of August 20. The body was found that afternoon lying on an abandoned bridge over the South Fork River, about five miles southwest of Taylorville.

On the evening of August 19, the victim had gone with her sister, Debbie Christer, to the Victory Tavern in Pana, where the defendant was playing in a band. The defendant, who was acquainted with the victim, asked her to have breakfast with him after the band finished playing. She later arranged by phone for the defendant to pick her up at her sister's house in Pana. After the defendant and another couple picked up the victim at her sister's house, the group went to several different places together. At about 2:30 or 3 a.m., the victim and the defendant left the others and drove away in the defendant's car.

The prosecution's chief witness was 21-year-old Thomas Forrest, who was living at the time of the murder in a hearse parked in Hewittville, about four miles from where the body was found. Forrest testified that in the early morning hours of August 20, he was awakened by knocking on the windows of the hearse and introduced by the defendant to a woman named "Dot." He later identified the deceased as the woman who accompanied the defendant. Forrest stated he got into the defendant's car, a pale blue 1971 Oldsmobile, and conversed with the defendant and the victim for 20 to 30 minutes. The defendant invited Forrest to accompany them to a party in Shelbyville; however, Forrest declined the invitation. The defendant then asked for a blanket, stating that "he was going to spend the rest of the night there at the lot with the girl."

The defendant took the blanket and drove away, but returned a short time later and asked Forrest to loan him a sawed-off .410 shotgun. Forrest further testified that the defendant checked to see if the weapon was loaded, said he intended to commit an armed robbery and then left again in his car. The defendant returned to the hearse a third time, about 15 or 20 minutes later, and returned the shotgun to Forrest. Forrest testified that on Saturday, August 22, he disassembled and cleaned the shotgun.

Forrest consented to a search of his hearse and automobile on Au-

gust 23, according to the testimony of Christian County sheriff's investigator George Wise. Wise stated that he and other officers recovered Forrest's shotgun, a blue blanket, loaded revolver, a large quantity of money and several bottles of pills. Wise seized and destroyed the drugs.

Corroborating witnesses offered by the prosecution included Terry Wadkins and Helen McDonald, who lived near the bridge. Wadkins testified that at 5:30 a.m. on the day of the murder, he heard a vehicle drive to the bridge. Shortly after that, he heard a shot and then heard the vehicle leave. He stated that although he did not see the car, it sounded like it had a hole in its muffler. Helen McDonald testified that she was awakened about 5:30 a.m. by the sound of an old car driving away from the bridge. She described the car as "maybe a dirty gray color" and occupied by only the driver, who "looked like a man." Detective Donald Brown testified that he had examined the defendant's car and found that there was a large hole in the muffler and that the crossover pipe was cracked. Detective Brown described the auto's exhaust system as "very noisy." In addition, Hazel Crisp, who lived with the defendant in a mobile home in Owaneco, testified that he got home on the morning of August 20 between 5:55 and 6:10 a.m.

Pathologist Edward Slifer was called as the first witness for the defense. He testified that he took oral, vaginal and rectal swabs of the victim during the autopsy and found semen in her vagina and on her underclothes. Deborah Fesser, an Illinois Department of Law Enforcement serologist, testified that she compared samples of the defendant's pubic hair with two hairs found in the victim's underwear. One of the hairs could have originated from the deceased, the other hair was dissimilar to the pubic hair of the deceased. Neither hair was similar to that of the defendant. The serologist stated she could not determine how long the hairs had been in the underwear. Thomas Forrest testified that he had refused police requests that he submit samples of his head and pubic hair for comparison testing.

After final arguments, the jury was instructed on the law and retired to deliberate. The jury returned with a verdict of guilty of murder. On appeal, the defendant argues that he was denied a fair trial by the remarks of the prosecutor during trial and during closing arguments.

The defendant makes four specific complaints about statements made by the two prosecutors. The defendant claims that the prosecutors: (1) repeatedly implied that he had the burden of disproving his guilt; (2) improperly appealed to the sympathy of the jury; (3) offered

their personal opinions as to the defendant's guilt; and (4) misstated or overstated important evidence.

■ The most serious issue presented is whether the prosecutor's comments about the burden of proof were reversible error. (See generally *United States v. Hastings* (1983), 461 U.S. ___, 76 L. Ed. 2d 96, 103 S. Ct. 1974; *People v. Starks* (1983), 116 Ill. App. 3d 384.) The following statements are presented by the defendant as examples of allegedly improper prosecution comments that the defendant was required to prove himself not guilty:

"MR. HOGAN [assistant State's Attorney]: Now, the testimony, the State feels from that time on [2:30-3:00 a.m.], shows that Dottie Diane Rhodes was with David Pauley. There has been no testimony she was ever with anybody else.

\* \* \*

MR. HOGAN: There has been no explanation given as to the whereabouts of Dottie Rhodes or Mr. Pauley during this period of time.

\* \* \*

MR. WARD [rebuttal by State's Attorney]: Now then, what you do in a criminal case when you haven't got a defense. You throw a smoke screen.

MS. SLEPICKA [defense counsel]: Your Honor, I'm going to object to that remark.

MR. WARD: Clutter the issues.

MS. SLEPICKA: The defense has to present no evidence in a case. Has to be no presentation of a defense in case.

MR. WARD: You did though.

MS. SLEPICKA: Your Honor, I object to that.

THE COURT: They don't have to present anything, Mr. Ward.

MR. WARD: I know.

THE COURT: Let's refrain from talking about—

MR. WARD: All right.

\* \* \*

MR WARD: Then they want to impune [*sic*] apparently the integrity of Dottie Rhodes by introducing some evidence that she had sex with someone. They don't tell us who. There is some indication that there was seminal fluid or semen or so forth in the vagina. I ask you, my friends, so what? What does it prove? Doesn't prove anything at all.

MS. SLEPICKA: Your Honor, I'm going to ask the State refrain from saying the defense has to prove anything in this

matter.

MR. WARD: I didn't say that.

THE COURT: He's commenting on the evidence.

MR. WARD: Commenting on your evidence.

THE COURT: Which he has a right to do.

\* \* \*

MR. WARD: There has been some proof introduced by the defense about a couple of stray hairs of some unexplained origin found in these green pants that the young lady was wearing.

\* \* \*

They haven't told us whose hairs those were, where they came from. Just another item, my friends, introduced to confuse and confound you.

We have a pair of boots introduced by the defense for whatever probative value they may have. They don't prove anything. There is some testimony that the defendant was wearing them earlier. Have nothing to do with the scene at the bridge. Many people went in and out of that bridge area. Did make footprints. Nothing says that Mr. Pauley's boots couldn't have gone in and out of there and made tracks. They're unrelated to anything. Yet they're here and part of the defense case. They have given those things to you for whatever little or no value they have. There simply isn't, my friends, and hasn't been presented to you any theory of how this young lady met her death other than that the State has given you.

\* \* \*

MR. WARD: However, if you review all this material that you have put it all together [*sic*], is there any other explanation? I suggest that the witnesses testifying here for the defense have not given you any other theory—

MS. SLEPICKA: Your Honor, like to show a continuing objection to this.

THE COURT: Yes, Mr. Ward, the defense has to present nothing.

MR. WARD: I understand that. Just saying the defense witnesses have not made the theory, and we're talking about circumstantial evidence. Do you in your own minds, have you concocted or can you imagine some other explanation how this young lady met her death other than what the prosecution has given you? I think not. No one has contradicted the testimony of Tom Forrest at all. It stands as given.

* * *

MR. WARD: We suggest to you that [the defendant is] responsible for [her death] and that there isn't any other theory about her death than that that we have given you."

The *Hastings* decision, a Supreme Court case which dealt with a similar prosecution comment, involved three defendants on trial in the United States District Court for the Southern District of Illinois on charges of kidnaping, transporting women across state lines for immoral purposes in violation of the Mann Act, and conspiracy. During the prosecutor's summation, the following exchange took place:

" 'PROSECUTOR: Let's look at the evidence the defendants put on here for you so that we can put that in perspective. I'm going to tell you what the defendants did not do. Defendants on cross-examination and—

DEFENSE COUNSEL: I'll object to that, Your Honor. You're going to instruct to the contrary on that and the defendants don't have to put on any evidence.

PROSECUTOR: That's correct, Your Honor.

THE COURT: That's right, they don't. They don't have to.

PROSECUTOR: But if they do put on a case, the Government can comment on it. The defendants at no time ever challenged any of the rapes, whether or not that occurred, any of the sodomies. They didn't challenge the kidnapping, the fact that the girls were in East St. Louis and they were taken across to St. Louis. They never challenged the transportation of the victims from East St. Louis, Illinois to St. Louis, Missouri, and they never challenged the location or whereabouts of the defendants at all the relevant times. They want you to focus your attention on all of the events that were before all of the crucial events of that evening. They want to pull your focus away from the beginning of the incident in East St. Louis after they were bumped, and then the proceeding events. They want you to focus to the events prior to that. And you can use your common sense and still see what that tells you . . . .' " (461 U.S. ___, ___, 76 L. Ed. 2d 96, 101-02, 103 S. Ct. 1074, 1077.)

The jury in *Hastings* found each defendant guilty on all counts. The United States Court of Appeals for the Seventh Circuit reversed the convictions and remanded for retrial, holding that the comments violated the defendants' fifth amendment rights. The Supreme Court reversed and remanded, holding that the prosecutor's comments were harmless beyond a reasonable doubt under *Chapman v. California*

(1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

In finding the error to be harmless, the court noted that three women victims described in detail the criminal acts of the defendants in raping and sodomizing them for three hours. The defendants were identified by the victims in a lineup after the crime. Neutral witnesses corroborated important aspects of the victims' testimony, especially one eyewitness. The court concluded, "*** a more compelling case of guilt is difficult to imagine." 461 U.S. ___, ___, 76 L. Ed. 2d 96, 108, 103 S. Ct. 1974, 1982.

In a footnote to the majority opinion, Chief Justice Burger acknowledged that the court did not address whether or not the prosecution argument was proper. (*United States v. Hastings* (1983), 461 U.S. ___, ___ n.4, 76 L. Ed. 2d 96, 104 n.4, 103 S. Ct. 1974, 1979 n.4.) Although the majority focused solely on the harmless error analysis, Justice Stevens, in his concurrence, found the prosecutor's comments free of constitutional error. (*United States v. Hastings* (1983), 461 U.S. ___, ___, 76 L. Ed. 2d 96, 109, 103 S. Ct. 1974, 1982 (Stevens, J., concurring).) Justice Stevens reasoned that a defendant's election not to testify will almost certainly prejudice his case; and, although it is improper to ask the jury to draw an adverse inference from the defendant's silence, the shield of the fifth amendment must not be "*** converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case." (*United States v. Hastings* (1983), 461 U.S. ___, ___, 76 L. Ed. 2d 96, 110, 103 S. Ct. 1974, 1984 (Stevens, J., concurring).) We agree with Justice Stevens' analysis of this issue.

The Illinois Supreme Court has already held that the State may make reference to the uncontradicted nature of its case. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.) In that case, the prosecutor stated, " 'We have heard no evidence here from the stand of what the reason, from his side, for this death was.' " (*People v. Skorusa* (1973), 55 Ill. 2d 577, 584, 304 N.E.2d 630, 634.) *Skorusa* held that the strengths of the State's case may be emphasized even when the only person who could have contradicted the State's evidence was the defendant himself. The Illinois Supreme Court rejected the defendant's argument in that case that the State's remarks were improperly intended to call the jury's attention to the defendant's failure to testify. *People v. Skorusa*.

Moreover, *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503, relied upon by the defendant, is factually distinguishable from the case at bar. In *Giangrande*, the prosecutor made the following statement about how the victim's body had been mutilated:

" 'What it means is, this man had the ability to do what Dr. Shalgos told you was necessary, told you any ordinary person couldn't have done what was done. *** could be a hunter, could be a doctor, could be a butcher, but Michael Giangrande is a butcher—

MR. BRADLEY [defense counsel]: Objection.

MS. PROPES [prosecutor]: (Continuing)—and his wife was butchered. *Now where's the evidence that the defendant didn't do it?*

MR. BRADLEY: Objection. He has no obligation to prove anything, and for her to say that we need evidence that he didn't do it is a total contradiction of law in this state.

THE COURT: It wasn't said that you needed evidence.

MR. BRADLEY: She said, where's the evidence.

THE COURT: I heard what was said, Mr. Bradley. Overruled.' " (*People v. Giangrande* (1981), 101 Ill. App. 3d 397, 401-02, 428 N.E.2d 503, 507.)

The appellate court found the remark "where's the evidence?" to be more than a comment that evidence is uncontradicted. The court held that the comment may have improperly suggested to the jury that the defendant had a burden to introduce evidence and that the trial court's failure to sustain an objection was error. In the case at bar, on the other hand, where two defense objections were sustained and the trial court expressly corrected the prosecutor when it appeared he might overstep the limits of proper comment, there is no reason to believe the defendant was prejudiced. (*People v. Price* (1979), 76 Ill. App. 3d 613, 394 N.E.2d 1256.) Also, the prosecution did not err by arguing that the defendant was trying to clutter the issues and confuse the jury. *People v. Griggs* (1977), 51 Ill. App. 3d 224, 366 N.E.2d 581.

■ In short, we are persuaded by the reasoning of Justice Stevens' concurrence in *United States v. Hastings* and hold that the prosecutor's arguments in the instant case did not amount to constitutional error. The prosecution's comments did not shift the burden of proof to the defendant, nor did the remarks improperly draw attention to the defendant's failure to testify or offer his own theory of the case. Instead, we find the remarks to be proper comment on the uncontradicted, albeit circumstantial, nature of the State's case.

■ The defendant also contends that the prosecutor improperly appealed to the sympathy of the jurors by asking the victim's sister if she had viewed the body at the funeral home. The defense portrays this questioning as an effort to distract and inflame the jury. How-

ever, the prosecutor expressly stated at the time that his purpose was identification. After a second objection was made to this line of questioning, it was sustained by the trial judge and the matter was abandoned by the prosecutor. In any event, the prosecutor's questioning in the instant case differs sharply from the remarks made in the closing arguments of *People v. Bartall* (1982), 105 Ill. App. 3d 867, 435 N.E.2d 152, *appeal allowed* (1982), 91 Ill. 2d 572. In *Bartall*, the prosecutor said of the murder victim:

> "'She has brothers and sisters and a mom and dad. They don't have Betty anymore. They don't talk to Betty anymore. They buried her in the ground last year because he killed her.'"
> (*People v. Bartall* (1982), 105 Ill. App. 3d 867, 874, 435 N.E.2d 152, 158.)

The direct examination in the instant case did not approach the impropriety of the closing argument in *Bartall*. If in fact the remarks here were improper, any error was cured when the trial court sustained the defense objection.

■ Next, the defendant asserts that the prosecutor improperly gave his personal opinion on the issue of the defendant's guilt or innocence when he stated:

> "MR. WARD [State's Attorney]: So that basically speaking the State believes it's explained to you as best it can how this crime was committed. That this girl was not seen after she left her home and got into the car with David Pauley until she was found at this particular bridge dead. And we're asking the jury to come in with a verdict of guilty because if we have to try to explain these facts we find [*sic*], we think this is the logical and in fact it's the only explanation that we can give you.
>
>                     * * *
>
> MR. WARD [State's Attorney]: There is no reason to think that the man [Forrest] would come in here and lie to you.

These statements were not error. The prosecutor was merely telling the jury what the State believed the evidence to show and submitting the facts to the jury for its decision. (*People v. Bost* (1980), 80 Ill. App. 3d 933, 400 N.E.2d 734.) The State may also characterize its witnesses as honest and believable. (*People v. Martinez* (1977), 45 Ill. App. 3d 939, 360 N.E.2d 495.) In any event, the defendant waived this assignment of error by not objecting at trial or in his post-trial motion. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ Finally, the defendant alleges that the prosecution misstated or overstated the evidence. Several different examples are offered in-

cluding prosecution statements that: the defendant telephoned the victim the night of the murder (she actually telephoned him); an ambulance driver at the scene did not know the bridge existed (he stated he had never been there before); the fatal shot was fired by Forrest's .410 shotgun (testimony showed the weapon could have caused the victim's death—not that it did); the defendant returned the blue blanket to Forrest when he returned the shotgun (there was no testimony by Forrest on this point). We have carefully examined all of the alleged misstatements of evidence offered by the defendant and conclude that any misstatements do not require reversal. Prosecution statements that the victim was murdered with Forrest's .410 shotgun were a reasonable inference drawn from the evidence since the defendant was in possession of the weapon and in the company of the victim at the approximate time of her death. (*People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.) Other alleged misstatements are inconsequential. In any event, these alleged errors were not properly preserved for our review. *People v. Carlson; People v. Pickett.*

For the foregoing reasons, the judgment of the circuit court of Christian County is affirmed.

Affirmed.

HARRISON, P.J., and JONES, J., concur.