2025 IL App (2d) 230472-U
No. 2-23-0472
Order filed March 28, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1073 |
| OSCAR MARTINEZ, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justice Jorgensen concurred in the judgment.
Justice Schostok specially concurred.

**ORDER**

¶ 1    *Held*:  Defendant showed no plain error in the trial court's judgment that defendant's statements were inadmissible and that no hearsay exceptions applied.

¶ 2    Defendant, Oscar Martinez, appeals from his conviction of three counts of attempted first-degree murder (720 ILCS 5/9-1(a)(1)). He contends that the trial court's denial of his motion i*n limine* to introduce certain statements he made after firing a weapon at police officers violated his due process right to present a defense. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 On June 26, 2022, North Chicago police officers responded to two 911 calls from an apartment residence. The callers identified defendant as the person threatening people in the residence with a gun. Upon arrival, the officers saw defendant outside of the apartment complex holding a gun with his mother following behind him. Defendant was ordered to drop the weapon but instead began firing towards the officers in the parking lot. Shortly thereafter, defendant dropped the gun and surrendered to police. As he was placed under arrest, an officer asked defendant why he was shooting at them. Defendant responded, "I'm sorry. I'm sorry. I panicked. I don't know what the fuck I'm doing. I'm sorry." Defendant was transported to the North Chicago Police Department and placed in holding cell.

¶ 5 While being processed, defendant apologized to Officer Groves, telling him, "I know you probably have a family." Approximately 30 minutes after his arrest, while in a holding cell, defendant became upset and began crying. Officer Keske said to defendant, "It's ok, you already apologized. Nobody got hit, you're good." Defendant responded, "I'm sorry. I didn't know what I was doing. I'm not trying to be here." Keske then asked defendant what he meant, to which defendant replied, "I'm not trying to be alive." Defendant was then transported to the hospital for psychiatric evaluation and remained there for the next 10 days.

¶ 6 On August 3, 2022, defendant was indicted for four counts of attempted first-degree murder, four counts of aggravated discharge of a firearm, and three counts of aggravated unlawful use of a weapon.

¶ 7 On July 6, 2023, the State and defendant filed opposing motions *in limine*. The State sought to bar the defense from introducing evidence pertaining to defendant's suicidal statements and receipt of mental health treatment following his arrest. The State argued that defendant's statements and mental health treatment were irrelevant. The State maintained that defendant's

statements were self-serving, inadmissible hearsay. Further, the State sought to admit police video footage of defendant's apologetic statement to Officer Groves at the police station.

¶ 8     Defendant's motion sought to admit his suicidal statements and subsequent mental health treatment as relevant to his intent and state of mind at the time of the shooting incident. Defendant further argued that his statements in the holding cell were admissible as excited utterances.

¶ 9     On July 7, 2023, the trial court held a hearing on the motions. Following argument from the parties, the trial court made the following findings regarding defendant's argument that his statements in the holding cell were admissible as excited utterances:

"So, focusing on the defendant's statement *** the foundation for admitting an excited utterance, which is Illinois Rule of Evidence 803(2), the statement relating to a startling event or condition made while declarant was under the stress of excitement caused by the event or condition. Obviously, lots of cases *** have interpreted it, but here the excited or startling event or series of events would be what happened at the scene. It would be the shooting. It would be the police arriving. It would be the allegations that the defendant shot at the police. It might even be the *I surrender*, *I surrender*, and him getting down and perhaps him being handcuffed, but that was there then.

Now we're at the police station, and the processing has taken place. Some time has gone by. And it's understandable that the defendant is upset in this context, but it is far from when the excitement of the moment occurred.

***

The Court's considered to the extent that, well, maybe it's a continuing excitement, and while he's still in the jail cell he's excited, and therefore it's in relation to that startling event. But being in custody by itself is not generally a startling event for an excited

utterance, and even if it were, it would be the beginning of the time in custody, not after the time has worn on and the booking as been undertaken and being held in a holding cell and waiting for the night to turn into the morning to go to bond court. That excitement just doesn't last forever.

Here, standing alone is not sufficient excitement. Not to say that the defendant wasn't upset, it's just based on upon this evidence, as the Court finds it, that's not a startling event warranting admission as a hearsay exception under case law in Illinois."

¶ 10    The trial court then made the following findings regarding defendant's argument that his statements in the holding cell were admissible as under the state of mind exception to hearsay:

"The defendant is apologizing, and the statements the defense is proffering are what we'll just call suicidal. That too does not relate back to what's relevant in this case. It has to tie into the charges, to the elements of the cause of action, to a defense to the cause of action.

Attempt murder is certainly a specific-intent offense, but suicidal ideations much after the offense are not relevant to whether the defendant, this defendant or any other, had the specific intent to commit the offense he's charged with at the time he allegedly did so. So, the Court does not find it relevant for that purpose or to satisfy the hearsay exception either, so two different grounds why it wouldn't be admitted for that purpose."

¶ 11    The trial court then opined, *sua sponte*, as to the applicability of the completeness doctrine regarding defendant's holding cell statements. It stated as follows:

"And though not fully argued, the Court has considered the completeness doctrine under Rule 106 which provides that when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any

other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Simply put, these are separate conversations. The statements the Court previously ruled admissible for the [State] were leading up to and prior to the booking process. This statement is much later, different time, different place, different people, not part of the same thing.

The defendant's statement proffered here are simply what they seem to be. He's very upset. He's very concerned. He may have been suffering from significant mental health issues at that time, but that's what they were. He had a right to be upset, he had a right to be concerned, and he had a right to have mental health issues addressed if that's what happened, but that doesn't get you past the rules of evidence."

¶ 12   On July 14, 2023, defendant filed another motion *in limine*. The motion sought to admit police bodycam footage from the time of defendant's arrest at the scene wherein he stated, "I'm sorry. I'm sorry. I panicked. I don't know what the fuck I'm doing. I'm sorry." Defendant argued that the statement was admissible as excited utterance, state of mind, or statement against interest exceptions to hearsay.

¶ 13   On July 17, 2023, the trial court addressed defendant's motion just before the commencement of his jury trial. Regarding admission of defendant's statement at the scene of his arrest as an excited utterance, the trial court found as follows:

"The excitement had ended. The excitement in this context to support admission under an excited utterance exception logically would have to be that the defendant was excited by being arrested essentially.

I'm not familiar with any case that so holds.

But in any event, on the facts of this case, the defendant's own behavior and demeanor does not suggest that he is excited; if anything, he is defeated and withdrawn; indeed, apologetic; but not excited.

And I'm not sure - - well, perhaps an arrest could be a startling event in some case. But here it wasn't; indeed, the defendant surrendered. So, it hardly startled him.

So, I don't see it being as an excited utterance for any number of reasons."

Regarding admission of defendant's statement at the scene of his arrest as a state of mind exception to hearsay, the trial court found as follows:

"As the rule itself provides, the statement needs to be about a then-existing state of mind, emotion, sensation, or physical condition to prove the state of mind, emotion, sensation or physical condition.

If it's being used as a hearsay exception, is it being offered to show that he was sorry, since he said he was sorry? Is it being offered to show he didn't know what he was doing, since he said he didn't know what he was doing? These types of things.

In the end, insofar as Rule of Evidence 803(3), commonly referred to as the state of mind hearsay exception, that type of interpretation as applied to the facts of this case would simply swallow the rule against hearsay.

Within a framework of *** [Rule] 803, this is simply a defendant's self-serving statement."

Regarding admission of defendant's statement at the scene of his arrest as a statement against interest exception to hearsay, the trial court found as follows:

"In Illinois, a statement against interest is defined as one which at the time of it's making was so far contrary to the declarant's pecuniary or proprietary interest or so far

tended to subject the declarant to civil or criminal liability as to render invalid a claim by the declarant against another; that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

\*\*\*

The acid test for these often is the nature of that statement; whether it \*\*\* tended to subject the declarant to liability. This is a far cry from that.

A defendant expressing remorse or apology for his actions is not admitting his guilt; particularly when he marries it to the statement of, I didn't know what I was doing. That's far more exculpatory than inculpatory.

In the end it fails to meet the foundation in this case, based upon the facts of this case, for admission under Rule 804 as well.

So, your motion is denied."

¶ 14    At trial, the State called Officer Eric Martin. Martin testified that he was dispatched to 1707 Arrington Circle on June 26, 2022, at approximately 1:30 a.m. in response to two 911 calls reporting that a man with a gun had fired a shot in the apartment complex. Four other officers were already at the scene. Martin was about 100 feet from defendant when he saw him fire at least four shots towards the other officers. Defendant's mother was behind defendant trying to talk to him. Martin told defendant to drop the gun and put up his hands, but defendant pointed the gun at Martin. Martin did not shoot because defendant was standing in front of an apartment window. Martin was forced to take cover when defendant fired two shots at him; one hitting a parked car, the other ricocheted in front of Martin. Defendant moved to a wooded area near the complex's parking lot. Martin shouted at defendant to relinquish his weapon and come out with his hands up. Defendant came out of the wooded area, threw his gun to the ground, laid on the ground, and was

placed in handcuffs. The State entered Martin's bodycam footage into evidence with portions of the audio removed due to the trial court's prior rulings.

¶ 15    The State called Officer David Mando. Mando testified that he arrived to the apartment complex alone in his squad car at approximately the same time as fellow officers Tierro Groves and Micah Cress. After getting out of the squad car, Mando approached the apartment complex with a rifle. He observed defendant walking across the parking lot with his mother while holding a gun. Mando then got behind a white SUV and shouted at defendant to drop the weapon. Defendant then fired two shots in the direction of where Mando was positioned. Mando testified that defendant was looking at him as he fired. He recalled hearing defendant fire a total of six shots; three sets of two shots each. The State entered photographs of the white SUV into evidence. Two windows on the vehicle were shattered.

¶ 16    The State called Officer Tierro Groves. Groves testified that when he arrived at the scene with Mando and Cress, he observed defendant having a verbal dispute with his mother and a young lady. When he got out of his vehicle, he and Mando shouted at defendant to put his gun down. Defendant then raised his gun and fired shots at them. Groves took cover behind a vehicle in the parking lot. Groves testified that none of the officers on the scene fired at defendant. Groves handcuffed defendant after he emerged from the wooded area and recalled defendant saying, "I'm sorry." The trial court interrupted the testimony and prevented Groves from saying anything further. After defendant was transported to the police department, defendant asked Groves what his name was and said that he was sorry, "I know you have a family." Footage from Officer Keske's bodycam depicting that statement was entered into evidence.

¶ 17    The State called Officer Micah Cress. Cress testified that he approached defendant and his mother in the apartment complex with Groves and Mando. He recalled hearing the other officers

commanding defendant to put down the gun before he heard a total of six shots; three sets of two shots each. Cress testified that he could not see where the shots were coming from. Footage from Cress's bodycam was entered into evidence.

¶ 18    The State called Officer Marc Keske. Keske testified the he arrived to the scene when defendant was already in custody. Keske transported defendant to the police department where defendant told officer Groves that he wanted to apologize. The State published defendant's statement that he was sorry and "I know you have a family" to the jury. Keske testified that defendant was remorseful and emotional in the back of his squad car during the transport to the police department.

¶ 19    After the State rested, defendant moved for a directed finding. The trial court denied the motion. Defendant elected not to testify or present any witnesses.

¶ 20    The jury found defendant guilty of the attempted murders of Officers Groves, Mando, and Martin. Defendant was acquitted of the attempted murder of Officer Cress.

¶ 21    On August 18, 2023, defendant filed a motion to reconsider the judgment and for a new trial. The motion argued that the evidence presented was insufficient to prove him guilty beyond a reasonable doubt. The motion, however, raised no arguments regarding the trial court's rulings on the motions *in limine*.

¶ 22    On October 24, 2023, the trial court denied defendant's post-trial motion and sentenced him to 49 years' imprisonment on each of the three attempted murder counts to be served concurrently.

¶ 23    This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    In this appeal, defendant contends that the trial court erred when it found certain statements to be inadmissible hearsay. First, defendant argues that his statement, "I'm sorry. I'm sorry. I panicked. I don't know what the fuck I'm doing. I'm sorry," was admissible as both an excited utterance and state of mind exception to the hearsay rule. Second, defendant argues that his statement while crying in the holding cell, "I'm sorry. I didn't know what I was doing. I'm not trying to be here *** I'm trying not to be alive," was admissible as a state of mind exception to the hearsay rule. Additionally, defendant argues that the trial court's ruling on his holding cell statement violated the completeness doctrine. Finally, defendant contends that the trial court's errors denied his due process right to present a complete defense as allowance of evidence on his state of mind would have undermined the State's argument on the element of intent.

¶ 26    Defendant concedes that his arguments were not preserved for review as defense counsel failed to contemporaneously object or include the issues in a post-trial motion. However, he asserts that the contentions may still be reviewed by this court under the plain-error doctrine.

¶ 27    We will first address defendant's argument regarding the completeness doctrine as codified in Illinois Rule of Evidence 106. See Ill. R. Evid. 106 (eff. Jan. 1, 2011). He argues here, for the first time, that because the trial court allowed the State to introduce his statement to Groves during the booking process, "I'm sorry officer. I know you probably have a family," it should have admitted his statement made while crying in the holding cell. However, defendant never raised the completeness doctrine in his motion *in limine* or his post-trial motion. The completeness doctrine was address *sua sponte* by the trial court. A defendant's failure to object at trial deprives the trial court of the opportunity to correct the error, and a defendant's failure to object in a written posttrial motion deprives the reviewing court of the factual findings that the trial court might have made regarding the effect of the alleged error on the weight of the evidence presented against defendant.

*People v. Anaya*, 2017 IL App (1st) 150074, ¶ 50. Defendant's Rule 106 argument is, therefore, procedurally defaulted, not just for his failure to raise it in a posttrial motion, but also because he failed to raise it in the trial court at all. See *People v. Hernandez-Chirinos*, 2024 IL App (2d) 230125, ¶ 73.

¶ 28     We now turn to defendant's contentions and review them for plain error. Plain error occurs where the defendant shows a clear or obvious error, and that either (1) the evidence is closely balanced, or (2) the error is of such magnitude that the defendant is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Johnson,* 208 Ill. 2d 53, 64 (2003). A reviewing court typically undertakes plain-error analysis by first determining whether error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). If error is found, the court then proceeds to consider whether either of the two prongs of the plain-error doctrine have been satisfied. *Sargent*, 239 Ill. 2d at 189-90. Under both prongs, the burden of persuasion rests with the defendant. *Id*. at 190.

¶ 29     Defendant argues that the trial court erred when it found that his statement immediately after arrest was inadmissible under the excited utterance exception. Defendant takes exception to the trial court finding his statement inadmissible because it found that (1) being arrested was not an exciting occurrence; and (2) defendant's demeanor was shut down rather than excited.

¶ 30     Rule 803(2) codifies an excited utterance as an exception to the hearsay rule. Ill. R. Evid. 803(2) (eff. Jan. 1, 2011). Rule 803(2) defines an excited utterance as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id*. For a hearsay statement to be admissible under this exception, (1) there must have been an occurrence that was sufficiently startling to produce a spontaneous and unreflecting statement, (2) there must have been an absence of time between the occurrence and

the statement for the declarant to fabricate the statement, and (3) the statement must relate to the circumstances of the occurrence. *People v. Robinson*, 217 Ill. 2d 43, 62 (2005). In applying these elements to determine whether a hearsay statement is admissible, a court should consider the totality of the circumstances, including the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest. *Id*. A reviewing court will not disturb the trial court's decision regarding the admission of evidence at trial absent a clear abuse of discretion. *Id*.

¶ 31    The trial court's finding that defendant's behavior and demeanor did not suggest that he was excited upon being placed under arrest is supported by the evidence. Even though firing a gun at police officers potentially qualifies as a startling event, the bodycam footage shows that defendant placed his weapon on the ground, laid down, and gave himself up for arrest. Defendant was not startled by the arrest. Further, the footage supports the trial court's finding that defendant was "defeated, and withdrawn; indeed, apologetic; but not excited." A reasonable interpretation of defendant's behavior at the scene of his arrest would be that he realized the gravamen of what he had just done. Apologizing to police officers after just shooting at them was merely a reflection of defendant's own self-interest after a startling event that he created. Therefore, the trial court did not abuse its discretion in finding that defendant's statement at the scene of his arrest was not an excited utterance exception to the hearsay rule.

¶ 32    Defendant next argues that the trial court erred in finding that his statements immediately after his arrest and in the holding cell were inadmissible under the state of mind exception to hearsay. Specifically, defendant takes issue with the trial court's findings that the statements were self-serving not relevant. Defendant argues that the statements were relevant and their suppression

prevented the jury from hearing consequential circumstantial evidence of his mental state at the time of the shooting.

¶ 33    Rule 803(3) codifies "then existing mental, emotional, or physical condition," commonly referred to as the state of mind exception to the hearsay rule. Ill. R. Evid. 803(3) (eff. Jan. 1, 2011). Rule 803(3) allows for the admissibility of a hearsay statement if it is "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health). *Id*. An out-of-court statement of a declarant is admissible when that statement tends to show the declarant's state of mind at the time of the utterance. *People v. Lawler*, 142 Ill. 2d 548, 559 (1991).

¶ 34    For the State to obtain a conviction of attempted murder, a specific intent to kill must be proven beyond a reasonable doubt. *People v. Ephraim*, 323 Ill. App. 3d 1097, 1110 (2001). The intent to kill is a state of mind which can be proven by presenting evidence of the surrounding circumstances and the character of the assault, including the use of a deadly weapon, and the firing of a gun at or towards another person with either malice or a total disregard for human life. *Id*. The specific intent to kill may be inferred so long as the surrounding circumstances show that the defendant intended the willfully committed act, the direct and natural tendency of which is to destroy another's life. *Id*. The fact of firing a gun at a person supports the conclusion that the person doing so acted with an intent to kill. *Id*.

¶ 35    As to the statement immediately following his arrest, defendant relies on *People v. Bartall*, 98 Ill. 2d 294 (1983), as support for his argument that his apologetic statements reflected his intent at the time of the shooting. In *Bartall*, the defendant fired two shots from his vehicle. *Bartall*, 98 Ill. 2d at 300. One of the shots hit and killed a woman standing in the parking lot and defendant was charged with murder. *Id*. The defendant was prevented by the trial court from offering

evidence that he had said that he was going to shoot out the victim's tires. *Id*. at 305. Our supreme court agreed with the appellate court that the statement should have been allowed as a state of mind exception to the hearsay rule as the defendant's statement was admissible to prove his intent and to prove that he acted in accordance with that intent. *Id*. at 319.

¶ 36    Unlike in *Bartall*, defendant's statements in the present case were not indications of his state of mind at the time he fired at the police officers. As Rule 803(3) itself provides, the statements need to be about defendant's then-existing state of mind, emotion, sensation, or physical condition to prove the state of mind, emotion, sensation or physical condition. Further, it is unclear what "I'm sorry. I'm sorry. I panicked. I don't know what the fuck I'm doing. I'm sorry," was being offered to show. Just because defendant was remorseful does not mean that he did not act with intent. Indeed, the evidence at trial showed that when the officers arrived at the apartment complex and told him to drop his weapon, he looked at them, raised his gun, and began firing directly at them. The trial court's finding that defendant's statement at the scene of his arrest was inadmissible hearsay was not an abuse of discretion as, in addition to being purely self-serving, its ambiguous nature clouds its relevance.

¶ 37    Similarly, the trial court was within its discretion to exclude the statements made by defendant in the holding cell. The trial court found that defendant's "suicidal ideations much after the offense are not relevant to whether this defendant or any other had the specific intent to commit the offense." Approximately 20 minutes had elapsed between the time of the shooting and the statements. Defendant had time to contemplate what had occurred and what potential consequences awaited him. It is understandable that he would be upset, even suicidal, but the statements in the holding cell are even more remote than those made immediately following his arrest, and much less related to whether defendant acted with the intent to kill the officers.

Therefore, the trial court did not abuse its discretion when it found that the holding cell statements were not admissible as a state of mind exception to hearsay.

¶ 38    As we have found no error with the trial court's evidentiary determinations, we can find no plain error. See *Sargent*, 239 Ill. 2d at 189. However, this does not immediately end our analysis. Defendant contends that the trial court's rulings deprived him of his due process right to present a complete defense. He argues that the trial court's refusal to allow evidence of his state of mind prevented him from undermining the State's argument on the intent element of attempted murder.

¶ 39    "The fundamental purpose of the rule against hearsay is the exclusion from evidence of those out-of-court assertions whose real value cannot be determined because the source of the assertion cannot be cross-examined by the party against whom it is being offered." *People v. Poole*, 121 Ill. App. 2d 233, 238 (1970). Self-serving statements by an accused are inadmissible hearsay. *People v. Patterson*, 154 Ill. 2d 414, 452 (1992). Such statements are inadmissible hearsay because their relevance depends upon the truth of the matter asserted or the declarant's belief in the truth or falsity of the matter asserted. *Id.*

¶ 40    Defendant is entitled to present evidence which might tend to create doubt as to his guilt, but that evidence must be relevant and material to be admissible. *People v. Mikel*, 73 Ill. App. 3d 21, 30 (1979). The trial court has the power and discretion to exclude evidence offered by the defense in a criminal case based on irrelevancy without infringing a defendant's constitutional right to present a defense. *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 51. Defendant chose not to testify in the case, which is his right. However, we cannot agree that defendant was deprived of his right to present a defense because nothing prevented him from offering evidence or his own testimony to undermine the State's argument regarding his intent to kill the officers when he raised a gun and fired at them.

¶ 41    Finally, defendant argues that his counsel was ineffective for failing to fully preserve the issues raised in this appeal. To succeed under such a theory, however, there must have been error. *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 24. The threshold step of plain-error review is determining whether an error occurred, and counsel cannot be ineffective for failing to object if there was no error to object to. *Id.*

¶ 42                              III. CONCLUSION

¶ 43    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 44    Affirmed.

¶ 45    JUSTICE SCHOSTOK, specially concurring:

¶ 46    I agree with the conclusion that defendant's statements were inadmissible hearsay. However, I write separately regarding the determination that the statements were not relevant. "Relevance is a threshold requirement that must be met by every item of evidence." *People v. Dabbs*, 239 Ill. 2d 277, 289 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v. Pikes*, 2013 IL 115171, ¶ 21 (citing Ill. R. Evid. 401 (eff. Jan. 1, 2011)).

¶ 47    In my view, defendant's statements are relevant to the issue of his intent. Because attempted murder is a specific intent crime, the State was required to prove that defendant "subjectively desired the prohibited result." *People v. Grayer*, 2023 IL 128871, ¶ 23. His claim that he panicked and didn't know what he was doing could call into question his intent and potentially undermine the State's evidence. Nevertheless, I agree that the statements were properly excluded as inadmissible hearsay for the reasons expressed in the majority opinion.